UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| SWAIDAN TRADING CO. LLC, § § Plaintiff, § § v. § § DILETON MARITIME S.A., § ANDROUSSA SHIPPING S.A., and § ERIKOUSSA MARITIME S.A, § § Defendants. § | CIVIL ACTION NO. 2:18-CV-994 JUDGE_____ MAG. JUDGE _____ IN ADMIRALTY |

## ORIGINAL VERIFIED COMPLAINT

Plaintiff SWAIDAN TRADING CO. LLC ("SWAIDAN" or "Plaintiff"), by its undersigned counsel, as and for its Verified Complaint against the Defendants DILETON MARITIME S.A. ("DILETON"), ANDROUSSA SHIPPING S.A. ("ANDROUSSA") and ERIKOUSSA MARITIME S.A. ("ERIKOUSSA") (collectively the "Defendants" or "Vessel Owners"), avers and pleads as follows:

### I. JURISDICTION, VENUE AND PARTIES

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of maritime contracts – *i.e*. the bill of lading; negligence; fraud; and implied warranty of workmanlike performance, all of which are claims cognizable in admiralty. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2. At all times material hereto, Plaintiff SWAIDAN was and still is a foreign business entity organized under the laws of the United Arab Emirates.

1

3. At all times material hereto, Defendant DILETON was and still is a foreign business entity organized under the laws of Liberia, and trades from Greece with a principal address located at 79 Akti Miaouli & 1 Kanari Street, 185 37 Piraeus, Greece.

4. At all times material hereto, Defendant ANDROUSSA was and still is a foreign business entity organized under the laws of Liberia, with an address of "Care of Dileton Maritime SA, 79 Akti Miaouli & 1 Kanari Street, 185 37 Piraeus, Greece."

5. At all times material hereto, Defendant ERIKOUSSA was and still is a foreign business entity organized under the laws of Liberia, with an address of "Care of Dileton Maritime SA, 79 Akti Miaouli & 1 Kanari Street, 185 37 Piraeus, Greece."

6. The jurisdiction of this Honorable Court is founded on the presence within the District of property of the Defendants that may be attached by process of maritime attachment and garnishment under the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, as pled in Section V of this Verified Complaint.

7. Venue is proper in this matter as the property sought to be attached is currently located within the Eastern District of Louisiana, presently believed to be at Kenner Bend anchorage, near the Bunge Grain Elevator in St. Charles Parish.

## II. THE SUBSTANTIVE CLAIMS

### FACTS COMMON TO ALL CLAIMS

8. Plaintiff, SWAIDAN purchased a cargo of gas oil 5000PP in the quantity of 309,173 US Barrels from LITASCO Middle East DMCC at a price per barrel of USD 64.73 for a total value of USD 20,012,768.29 (the "Subject Cargo"). *A copy of the Final Invoice for this purchase is attached hereto as **Exhibit 1**.*

9.  On or about April 1, 2017, the Subject Cargo was loaded on board the M/T ANDROUSSA in Djibouti and was to be discharged at Ras Isa Port, Yemen. A clean bill of lading dated April 1, 2017, was issued by Defendant ANDROUSSA, registered owner of the M/T ANDROUSSA. *A copy of the clean bill of lading is attached hereto as **Exhibit 2**.*

10. On or about April 4, 2017, as the M/T ANDROUSSA approached Yemeni waters, the vessel was stopped and boarded by the Coalition Forces led by the Kingdom of Saudi Arabia ("KSA"). The vessel was directed to Jeddah, the KSA, for inspection, and then to Yanbu Al Bahr for a further more detailed inspection.

11. The inspections by the Coalition Forces and the KSA Authorities found several serious violations indicating the likely smuggling of illegal weapons, and recommended the confiscation of the M/T ANDROUSSA and its cargo, including the Subject Cargo.

12. The matter was referred to the KSA, Ministry of Finance, Directorate General of Customs, Jeddah First Instance Committee, (the "First Instance Committee") which after examining the facts and the findings of the inspections found as follows:

   a. Three (3) of M/T ANDROUSSA's ballast tanks contained traces of highly explosive materials primarily used for military purposes;

   b. The Vessel Owners and crew tampered with documents showing the last ten (10) ports of call of the vessel in order to obtain permits to enter Yemeni ports (*A copy of the Port of Call List is attached hereto as **Exhibit 3***);

   c. The Vessel Owners and crew forged various documents showing the vessel was undergoing loading operations at Khasab, Oman between December 9, 2016 and December 14, 2016. The vessel was actually present in Bandar Abbas, Iran at this time;

3

d. The Vessel Owners and crew tampered with the maps and navigation devices in the vessel by deleting evidence that the vessel called at the ports of Bandar Abbas and Lavan Island, in Iran;

e. While the vessel was in Lavan Island and Bandar Abbas, the Inmarsat C2 and Automatic Identification System were switched off, making it impossible to track the vessel's position between November 25 and 29, 2016 and December 9 and 14, 2016, respectively;

f. The Vessel Owners and crew forged maritime passports belonging to certain crew members of Montenegrin nationality;

g. The Vessel Owners and crew attempted to break the Coalition Forces' maritime blockade in Yemen;

h. The vessel contained a large quantity of steel pipes which had been modified to be used as firearm components for military purposes;

i. The Master's computer contained various emails in relation to the smuggling of weapons and explosives into Yemen;

   i. One (1) email indicates that the cargo located in the vessel's tanks would be unloaded on the port's quay, whereas the cargo located in the vessel's ballast tanks would be unloaded directly onto trucks. Together with the finding of traces of highly explosive material in the ballast tanks, this makes clear that the Vessel Owners were carrying out smuggling operations to Yemen in contravention with the United Nations Security Council Resolution no. 2216 (2015).

      j.    The vessel was found to be in a condition not consistent with international ship safety standards.

13.    The First Instance Committee ordered the confiscation of the M/T ANDROUSSA and all her cargo, including the Subject Cargo. *An English translation of the First Instance Committee's Judgment No. 395 of 1438H is attached hereto as* **Exhibit 4**.

14.    Plaintiff is incurring finance costs in relation with the C&F value of the Subject Cargo at a rate of four percent (4%) per month from April 2017 until January 2018 (with charges continuing to accrue at the same rate on a monthly basis). Through January 2018 this amount is approximately USD 8,005,107.28

15.    Plaintiff has also incurred the cost of AED 174,175 (USD 47,420.89) in purchasing insurance for the Subject Cargo. *A copy of the Insurance Debit Note is attached hereto as* **Exhibit 5**.

16.    Plaintiff has also incurred banking charges for a Letter of Credit in the amount of AED 107,822.03 (USD 29,355.63). *A copy of the banking debit note is attached hereto as* **Exhibit 6**.

BREACH OF MARITIME CONTRACT

17.    Plaintiff, SWAIDAN repeats and re-alleges paragraphs one (1) through sixteen (16) of this Verified Complaint as if fully set forth herein.

18.    The April 1, 2017 clean bill of lading is a valid maritime contract.

19.    The bill of lading was issued by New Maritime S.A.R.L. on behalf of Defendant ANDROUSSA.

20.    The bill of lading provided for delivery to the order of Plaintiff, SWAIDAN.

21. Plaintiff, SWAIDAN, performed under the bill of lading in the loading of the Subject Cargo in Djibouti, for discharge at Ras Isa Port in Yemen.

22. Defendant ANDROUSSA, as Registered Owner of the M/T ANDROUSSA, failed to take care of the Subject Cargo while in its custody, failed to carry and discharge the Subject Cargo at the port of discharge, failed to make the vessel seaworthy and cargo-worthy, and failed to exercise due diligence to make the vessel seaworthy and cargo-worthy, all in breach of the Defendant's obligations under the terms of the bill of lading.

23. Plaintiff has made due demand upon Defendant ANDROUSSA and Defendant's insurer to compensate Plaintiff for the loss of the Subject Cargo.

24. Notwithstanding, Defendant ANDROUSSA has failed, neglected or otherwise refused to compensate Plaintiff for Plaintiff's losses, despite being exclusively the fault of the Defendant.

25. As a result of Defendant's failure and breach of the maritime contract, Plaintiff SWAIDAN suffered an economic loss of the value of the entire Subject Cargo, an amount not less than USD 32,148,417.30.

NEGLIGENCE

26. Plaintiff, SWAIDAN repeats and re-alleges paragraphs one (1) through sixteen (16) of this Verified Complaint as if fully set forth herein.

27. Defendant ANDROUSSA, as Registered Owner of the M/T ANDROUSSA, and Defendant DILETON, as Commercial Operator and Technical Manager of the M/T ANDROUSSA, owed Plaintiff a duty of care to properly and carefully load, handle, stow, carry, keep, care for and discharge the Subject Cargo.

28. Defendants ANDROUSSA and DILETON, through their actions failed in this duty, resulting in the loss of the Subject Cargo.

29. Defendants engaged in illegal activity, as discussed in paragraph twelve (12), evidencing Defendants' negligence in properly caring for the Subject Cargo.

30. As a direct result of Defendants actions, Plaintiff has suffered economic damages related to the loss of the Subject Cargo, in an amount not less than USD 32,148,417.30.

31. Plaintiff has made due demand upon Defendants and Defendants insurer to compensate Plaintiff for the loss of the Subject Cargo.

32. Notwithstanding, Defendants have failed, neglected or otherwise refused to compensate Plaintiff for Plaintiff's losses, despite being exclusively the fault of the Defendants.

## FRAUD

33. Plaintiff, SWAIDAN repeats and re-alleges paragraphs one (1) through sixteen (16) of this Verified Complaint as if fully set forth herein.

34. Defendant ANDROUSSA, in its capacity as Registered Owner of the M/T ANDROUSSA, and Defendant DILETON, in its capacity as Commercial Operator and Technical Manager of the M/T ANDROUSSA, falsely represented to Plaintiff that the M/T ANDROUSSA was seaworthy / cargoworthy and in compliance with all international regulations.

35. Defendant ANDROUSSA provided a Port of Call list and an IMO Crew list to Plaintiff and Defendants where Defendants made false representations as to the location of the last ten (10) ports that the M/T ANDROUSSA had called at. Specifically, Defendants excluded the ports of Lavan Island and Bandar Abbas from the Port of Call list. *See **Exhibit 3***.

36. Defendants represented to Plaintiff that the M/T ANDROUSSA was in a seaworthy and cargoworthy condition.

37. Defendants, pursuant to a letter from Defendant DILETON dated March 26, 2017, represented to Plaintiff that the only firearms and ammunition on board the M/T ANDROUSSA were locked in a safe and consisted of sixteen (16) rifles. *The Arms / Ammunition letter is attached hereto as **Exhibit 7***.

38. Defendants falsely represented the amount of weapons on board the M/T ANDROUSSA by excluding the presence of firearm components and explosive material.

39. Defendants had knowledge that the representations made to Plaintiff were false, and that the M/T ANDROUSSA was falsifying records and navigational systems with the intent to obfuscate its visits to Iran in order to smuggle weapons, explosives, and other contraband.

40. Defendants made these false representations in order to obtain Plaintiff's business. Plaintiff would not have contracted for the use of the M/T ANDROUSSA absent these representations by Defendants, specifically that the M/T ANDROUSSA was seaworthy / cargoworthy and in compliance with all international regulations.

41. As a result of Plaintiff's reliance on Defendants' false representations, Plaintiff has lost the Subject Cargo and suffered damages in an amount not less than USD 32,148,417.30.

<u>IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE</u>

42. Plaintiff, SWAIDAN repeats and re-alleges paragraphs one (1) through sixteen (16) of this Verified Complaint as if fully set forth herein.

43. Upon information and belief, DILETON served as Commercial Operator and Technical Manager for the M/T ANDROUSSA under a maritime service contract.

44. Under the maritime service contract for commercial operation and technical management of the M/T ANDROUSSA, Defendant DILETON has an implied warranty of workmanlike performance owed to Defendant ANDROUSSA, and to Plaintiff as an intended beneficiary of the contract.

45. Under the maritime service contract for commercial operation and technical management of the M/T ANDROUSSA, Defendant DILETON impliedly agreed to perform the contracted services in a diligent and workmanlike manner.

46. As evidenced by the findings of the First Instance Committee, summarized in paragraph twelve (12), Defendant DILETON did not perform under the maritime service contract in a diligent and workmanlike manner.

47. Plaintiff, as owner of the Subject Cargo aboard the M/T ANDROUSSA, was an intended beneficiary of the maritime service contract for the technical management and commercial operation of the M/T ANDROUSSA.

48. As a direct result of Defendant DILETON's breach of its warranty of workmanlike performance, the Subject Cargo was confiscated causing economic damages to Plaintiff in an amount not less than USD 32,148,417.30.

### III. UNDERLYING PROCEEDINGS ON THE MERITS

49. Plaintiff, SWAIDAN repeats and re-alleges paragraphs one (1) through forty-eight (48) of this Verified Complaint as if fully set forth herein.

50. This action is, in part, an ancillary proceeding, brought in order to obtain jurisdiction over Defendant ANDROUSSA, and to obtain security for Plaintiff's claims in aid of anticipated arbitration or High Court proceedings in London.

51. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. Further, the Senior Courts Act 1981 confirms that the High Court has the power to award simple interest for the recovery of a debt or damages.

### IV. <u>DEFENDANTS' CORPORATE IDENTITY</u>

52. Notwithstanding their formal separate incorporation, the Defendants are in actual fact a single business entity pursuing functionally differentiated business objectives through nominally separate business structures but always subject to the command and control of Mr. Dimitrios Papantonopoulos and Mr. Sotirios Papantonopoulos.

53. Upon information and belief, Defendant DILETON was established by, and is owned by, Mr. Dimitrios Papantonopoulos.

54. Defendant DILETON has a fleet of four (4) vessels consisting of the M/T ANDROUSSA, the M/T HYDROUSSA, the M/V DONOUSA, and the M/V ERIKOUSSA. *A copy of DILETON's website listing its fleet of vessels, available at www.dileton.gr is attached hereto as **Exhibit 8***.

55. According to the Lloyd's List Intelligence database, each of the four (4) above-referenced vessels is nominally owned by a different entity. To wit, the registered owner of the M/T ANDROUSSA is Defendant, ANDROUSSA SHIPPING S.A.; the registered owner of the M/T HYDROUSSA is Benamor Trading Corp.; the registered owner of the M/V DONOUSA is Aretoussa Shipping S.A.; and the registered owner of the M/V ERIKOUSSA is Defendant, ERIKOUSSA MARITIME S.A. *See documents attached hereto as **Exhibit 9***.

56. According to the Lloyd's List Intelligence database, Defendant DILETON is the Beneficial Owner of the M/T ANDROUSSA. "The Beneficial Owner is deemed to be the ultimate owning entity or representative thereof (either individual, company, group or organization). The Beneficial Owner may be the vessel's management company or the trading name of a group, both of which are generally perceived to represent the ultimate owners of the vessel." *See documents attached hereto as **Exhibit 9**, p. 9.*

57. Though Defendants comprise nominally separate corporate business / legal entities, their ownership and control is so intertwined and fused that they are distinct from one another merely as a matter of formality. As is pled more specifically below, Defendants ANDROUSSA and ERIKOUSSA are believed to be mere alter egos of DILETON, as all three (3) Defendants are members of a group of companies subject to the complete control and domination of Mr. Dimitrios Papantonopoulos and Mr. Sotirios Papantonopoulos.

58. On March 27, 2017, Defendant DILETON issued to Plaintiff a certification of Arms / Ammunition carried on the M/T ANDROUSSA, on behalf of Defendant ANDROUSSA. *A copy of this certification is attached hereto as **Exhibit 7**.*

59. The finances and business activities of Defendant DILETON, and the four (4) vessel-owning entities including Defendants ANDROUSSA and ERIKOUSSA are so intertwined, and there exists such a unity of ownership and interest between them that no separation exists.

60. The Office of the Deputy Commissioner of Maritime Affairs for the Republic of Liberia maintains copies of the first preferred mortgage for the M/T ANDROUSSA, which further connects the Defendants and the other vessel-owning entities in the DILETON group, and

11

establishes Defendant DILETON as the beneficial owner of the M/T ANDROUSSA. *A copy of the mortgage agreement is attached hereto as **Exhibit 10.***

61. The first preferred mortgage of the M/T ANDROUSSA, entered into between Defendant ANDROUSSA and the National Bank of Greece, S.A. secured a loan for another DILETON entity, Benamor Trading Corp. (registered owner of the M/T HYDROUSSA), in the amount of USD 3,968,700.

62. Under the terms of the first preferred mortgage of the M/T ANDROUSSA, Defendant DILETON is required to serve as Manager of the M/T ANDROUSSA. *See **Exhibit 10** at Art. 1 § 11.*

63. The first preferred mortgage of the M/T ANDROUSSA was executed by Mr. Dimitrios Papantonopoulos, who, upon information and belief, is the founder and owner of Defendant DILETON.

64. Further evidencing the interrelationship of the DILETON group of companies, the Office of the Deputy Commissioner of Maritime Affairs for the Republic of Liberia maintains copies of the first preferred mortgage for the M/V ERIKOUSSA, which was entered into by and between Defendant ERIKOUSSA and Eurobank Ergasias S.A. in order to secure a loan to Defendant ERIKOUSSA in the amount of USD 6,500,000.[1] *A copy of the first preferred mortgage of the M/V ERIKOUSSA is attached hereto as **Exhibit 11***.

65. The first preferred mortgage for the M/V ERIKOUSSA was signed in connection with a Loan Agreement between Eurobank Ergasias S.A. and ERIKOUSSA for the purchase of

---

[1] As further evidence showing the intermingling of the vessel-owning entities, a second preferred mortgage for the M/V DONOUSA was also entered into by and between Aretroussa Shipping S.A. (registered owner of the M/ V DONOUSA) and Eurobank Ergasias S.A. in order to secure the loan to Defendant ERIKOUSSA).

the M/V TIANJIN PIONEER (subsequently renamed M/V ERIKOUSSA). *The Loan Agreement is attached hereto as Appendix A to* **Exhibit 11**.

66. Pursuant to the Loan Agreement, Defendant DILETON was to act as the Approved Manager for the technical and commercial management of the M/V ERIKOUSSA, and as the Corporate Guarantor for the contract entered into by Defendant ERIKOUSSA. Aretroussa Shipping S.A. is also listed as the Collateral Obligor and a Corporate Guarantor under the Loan Agreement *See Appendix A, p.4-5, to* **Exhibit 11**.

67. Pursuant to Clause 21.1 of the Loan Agreement, all notices, requests, demands, or other communications under the Agreement shall be sent not to ERIKOUSSA, but to "c/o DILETON MARITIME S.A., 73 Akti Miaouli and 1, Kanari Str, 18537, Piraeus, Greece." *See Appendix A to* **Exhibit 11**.

68. The Loan Agreement was executed by Mr. Sotirios Papantonopoulos, on behalf of Defendant, ERIKOUSSA. *See Appendix A to* **Exhibit 11**.

69. Based on the foregoing, and upon information and belief, Defendant DILETON was and still is the Beneficial Owner of its entire fleet of vessels, including M/T ANDROUSSA, IMO No. 9101182 and M/V ERIKOUSSA, IMO No. 9291092.

70. Defendant ANDROUSSA provides its address as "Care of DILETON Maritime SA." *A copy of the Equasis ShipInfo website listing the Ownership of the M/T ANDROUSSA is attached hereto as* **Exhibit 12**.

71. Defendant ERIKOUSSA similarly provides is address as "Care of DILETON Maritime SA." *A copy of the Equasis ShipInfo website listing the Ownership of the M/V ERIKOUSSA is attached hereto as* **Exhibit 13**.

72. Laytime calculations and demurrage invoices for the M/T ANDROUSSA were provided by Defendant DILETON, on DILETON letterhead. *Copies of M/T ANDROUSSA laytime calculations and demurrage invoices are attached hereto as **Exhibit 14**.*

73. Accordingly, upon information and belief, Defendants are mere alter egos of each other subject to the complete domination and control of Mr. Dimitrios Papantonopoulos and Mr. Sotirios Papantonopoulos.

## V. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

74. Defendants are not present and cannot be found in the District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Law Claims of the Federal Rules of Civil Procedure. *See Affidavit of Attorney Daphne P. McNutt attached hereto as **Exhibit 15**.* Notwithstanding, the Defendants currently have within the District tangible personal property comprised of the M/V ERIKOUSSA, IMO No. 9291092, which is subject to attachment as security for Plaintiff's maritime claims.

75. Defendants, having operated at all relevant times as a single enterprise, and being the *alter ego* of each other in the circumstances set in the above and foregoing Original Verified Complaint, it would be fair and equitable for any asset of this enterprise to be subject to the claims of creditors of the enterprise, such as Plaintiff, and for any such assets to be attached as security for Plaintiff's maritime claims.

76. Plaintiff has maritime claims against the Defendants ANDROUSSA and DILETON arising out of (1) a maritime contract; (2) negligence; (3) fraud; and (4) breach of implied warranty of workmanlike performance, and similar claims against Defendant ERIKOUSSA on the basis of alter-ego.

77. As best as can be estimated at this time, Plaintiff SWAIDAN expects to recover the following amounts in London Arbitration from Defendants:

|   |   |   |
|---|---|---|
| A. | C&F value of the Subject Cargo: | $20,012,768.29 |
| B. | Finance costs of 4% per month from April 2017 through January 2018: | $8,005,107.28 |
| C. | Insuring the Cargo: | $47,420.89 |
| D. | Banking Charges: | $29,355.63 |
| E. | Total Principal Claim: | $28,094,652.09 |
| F. | Estimated interest on Principal Claim: | $3,553,765.21 |
|    | *2 years at 6.0%, compounded quarterly* |  |
| G. | Estimated attorneys' fees and costs: | $500,000.00 |
| D. | **TOTAL:** | **$32,148,417.30** |

78. Therefore, Plaintiff's total claim for breach of the maritime contract, negligence, and fraud against Defendants is in the aggregate **USD 32,148,417.30.**

79. The M/T ANDROUSSA's sister ship, the M/V ERIKOUSSA, is currently anchored within the Eastern District of Louisiana, and is expected to conduct commercial operations within the District.

80. Plaintiff believes that the M/V ERIKOUSSA, her engines, boilers, tackle, apparel, and all necessary appurtenances thereto, is tangible property and an asset of the Defendants which is or will be located in this District.

81. Defendants DILETON, ANDROUSSA, and ERIKOUSSA cannot be found within the Eastern District of Louisiana for the purposes of Rule B of the Admiralty Rules. *See Affidavit of Attorney Daphne P. McNutt attached hereto as* **Exhibit 15**.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

15

A. That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction issue against Defendants and said Defendants be cited to appear and answer the allegations of this Complaint;

B. That if Defendants cannot be found within this district, then all of their respective property within this district, including the M/V ERIKOUSSA, her engines, boilers, tackle, apparel, and all necessary appurtenances thereto, as well as debts, credits, or effects including but not limited to accounts, checks, disbursement advances, payments, property on board the M/V ERIKOUSSA, owned by the said Defendants or in the hands of persons named as garnishees in the Process of Maritime Attachment and Garnishment be attached and seized pursuant to Supplemental Admiralty Rule B for Certain Admiralty and Maritime Claims;

C. That a judgment be entered against the Defendants in the sum of **USD 32,148,417.30,** and the proceeds of the assets attached be applied in satisfaction thereof;

D. That the Court grant such other and further relief as it deems, just, equitable and proper.

Dated: February 1, 2018
New Orleans, Louisiana                                  Respectfully Submitted,


                                                        */s/ Daphne P. McNutt*_____
                                                        Daphne P. McNutt (#20292)
                                                        Stephen R. Barry (#21465)
                                                        W. Briggs Scott (#36013)
                                                        Barry & Co., LLC
                                                        612 Gravier Street
                                                        New Orleans, LA 70130
                                                        dmcnutt@barrylawco.com
                                                        sbarry@barrylawco.com
                                                        bscott@barrylawco.com
                                                        Telephone: (504) 525-5553
                                                        Facsimile: (504) 505-1909
                                                        Attorneys for Plaintiff

*Of Counsel*
CHALOS & CO, P.C.
Briton P. Sparkman
*Pro Hac Vice Application Forthcoming*
Attorney for Plaintiff
7210 Tickner Street
Houston, Texas 77055
Telephone: (516) 714-4300
Email: bsparkman@chaloslaw.com