# EXHIBIT 4

Kingdom of Saudi Arabia
Ministry of Finance
Directorate General of Customs
Jeddah First Instance Committee

### First Instance Customs Judgment No. 395 of 1438H
### Rendered in Case No. 318 of 1438H

Praise be to God Almighty alone and peace be upon the last Prophet.

On Thursday 23.12.1438H Jeddah First Instance Committee held its hearing at its premises in the Customs of Jeddah Islamic Port by the following bench:

| | | |
|---|---|---|
| 1. | Chairman: | Mr. Abdul Rahman Bin Dhawi Al Mohana, Director of Customs of Jeddah Islamic Port; |
| 2. | Member: | Mr. Bandar Muthaib Al Rahili, Director General of Customs of King Abdula Aziz Airport; |
| 3. | Member: | Mr. Mohamed Sami Hamam, Assistant Director General of Customs of Jeddah Port; |
| 4. | Member: | Mr. Saleh Ali Al Ghamdi, Director of the Legal Department; |
| 5. | Member: | Mr. Mohamed Ahmed Al Zahrani, Legal Consultant; |
| | Attending: | Mr. Abdulla Ahmed Al Shaeri, Secretary of the Customs Committee; |

In order to consider the case of violations of the vessel MT ANDROUSSA, the papers were read out and all procedures confirmed, the Committee duly deliberated to issue a customs decision in the case.

**Facts:**
The facts of the case are in brief that the General Directorate of Customs received cable no. 231733 from His Royal Highness the Crown Prince and Deputy Prime Minister and Minister of Interior on 6.9.1438H that the competent security authorities had information that the vessel MT ANDROUSSA, which flies the Liberian flag was suspected and there were substantive causes for checking it and His Royal Highness wanted that the said vessel should be checked by the security committee for ensuring its contents and the check process can be documented. As such, the vessel was watched as it arrived at Jeddah Islamic Port. The vessel was checked and examined and a final report was issued by the security committee as follows:

**First: The presence of traces of high explosives:**
The samples taken from the ballast tanks no. 6 and no. 4 at the board and ballast tank no. 3 at the starboard of the vessel proved traces of high explosives of RDX and PETN materials which are used in military purposes.

**Second: Tampering with official documents:**

Case 2:18-cv-00994-NJB-KWR   Document 1-6   Filed 02/01/18   Page 3 of 6

The vessel changed the documents of the last ten ports while it applied for permits to enter the Yemeni ports. These are considered important documents on the basis of which permits for entry are issued.

**Third: Forging official documents:**
A navigation certificate was found, which was issued by Oman police that the vessel arrived at the Khasab Oman Port within the period from 9.12.2016 to 14.12.2016 while the period where the vessel was present at Iranian port of Bandar Abbas. A document was also found that the vessel was loaded with cargo on 8.12.2016 from the Khasb Oman Port and the said document sealed by its agent in Dubai on 14.12.2016.

**Fourth: Deletion of the navigational route while the vessel was in the Iranian ports:**

Having examined the maps and navigation devices in the vessel, it was found that the navigation routes of the vessels to the Iranian port of Bandar Abbas and the Iranian Lavan Island were deleted. As such, the vessel attempted to mislead and conceal its movements while being present in the Iranian ports. As such, the vessel carried out illegal and smuggling operation.

**Fifth: The INMARSAT C2 and AIS – the arch for detailed AIS ship positions for the vessel C2. Track the route of C2 and view the latest positions, using the most recent vessel AIS:**

Having traced the vessel through the navigation track system, it was found that the vessel switched off the tracking and calling devices of the vessel for long periods of intermittent time, especially when it arrived at the Iranian ports and islands and when it was at the waiting area in front of the Yemeni territorial waters as the trace devices of the monitoring system were switched off within the period from 25.11.2016 to 29.11.2016 while the vessel was being present at the Iranian Lavan Island and the said devices were switched off while the vessel was being present at the Iranian port Bandar Abbas within the period from 9.12.2016 to 14.12.2016.

**Sixth: The numbers of the maritime passports of the citizens of Montenegro were forged and replaced by the registration numbers of the passports:**

They did so in order to mislead the port security authorities so that they could avoid the marking of any penal action on their maritime passports.

**Seventh: Attempting to break the marine blockade:**

While he vessel was being in waiting area west (42), all navigation track devices were switched off for periods of time and the alliance's vessel could not find it but through the coordinates given to them by the command and a note paper was found in the steering room, which shows as follows: "contact Al Salif Port when the wind speed is less than 15 knots and the beacon will be at 1400 hours." As such, the vessel had the intention to break the marine blockade.

T69710065390/001 23828852.1

**Eighth: There is a large quantity of steel pipes:**

There were large quantities of steel pipes in engine room of the vessel. The pipes are suspicious because some of them look like projectiles and other pipes look like gun barrels inside them there are objects look like plugs and furrows contained in the gun barrels. In fact, such pipes are used in military purposes.

**Ninth: Results of the inspection of the computers in the vessel:**

Two laptops of the bridge and shipmaster were examined and the results are as follows:

(a) An email sent in English on 13.10.2015 from SUSHMIT.ROY@PACIFICINTER-LINK .Com to the vessel as follows: "the draft in Al Makha does not exceed 6.5 meter in order you can enter Al Makha Port. Please allocate 4 loading tanks for palm oil and the others for bunkering. The loading will be in transshipment in Djibouti and then contact Al Makha Port to unload the cargo. The vessel will be loaded with palm oil once a month and the fuel per month. The draft of the vessel while being unloaded of cargo ranges from 5.50 to 7 meters. As mentioned in the last email, the draft of the vessel should not exceed 6.50 meters." We conclude that the vessel was loaded with lighter cargoes of oils and petroleum derivatives and might be weapons or explosives. This also can be a code used by the vessel for carrying out suspicious transactions.

(b) An email sent in English on 14.10.2015 the company sent the shipmaster, wherein the latter was requested to sign and seal the form attached to the message, which was a request to enter Al Makha Port and then sent it to the agent of Al Makha that the port of entry in Yemen would be Al Makha port. The said form was taken from the computer of the shipmaster and it is unsealed because it was directly taken from the laptop. Further, an email dated 16.10.2015 sent on 16.10.2015 the vessel sent the company, thereby it requested a map, Djibouti flag, and Al Makha map.

(c) An email sent in English dated 24.11.2015 the vessel sent the company, thereby the shipmaster wanted to know where the cargo would be unloaded on trucks or quays. The company answered that the cargo contained in the tanks would be unloaded on the quays whereas the cargo contained in the ballast tanks would directly be unloaded on trucks. If the emails referred to above are read altogether, the vessel could use Al Makha Port for carrying out the smuggling operations and there were persons in Al Makha Port for facilitating the procedures for the vessel. Further, the vessel obtained a permit from the alliance forces in the said period to enter Hodeida Port. This could be to ensure its entry to the area

in a legal way in route to Al Makha Port in order could not be obstructed by the alliance vessels.

**Tenth: Observation of the Maritime Inspection Section at King Fahd industrial Port:**

The observations and points brought forward by the Maritime Inspection Section at King Fahd Industrial Port mention many violations on part of the vessel and it is not consistent with the port criteria and international ship safety standards for which the port may retain the vessel pursuant to Riyadh memorandum of understanding.

The security committee recommended the confiscation of the vessel with its entire cargoes and the suspected steel pipes. Accordingly, the case was referred to the First Instance Committee by virtue of letter no. 63454 HE Director General of Customs sent on 16.9.1438H and the Committee summoned Shipping Agent Faisal Mansoor Heji & Associates and its manager Abdul Aziz Faisal Heji, as shown in the commercial registration of the company, appeared and he was interrogated and he stated that he had contact from the Customs that it wanted an shipping agent to be appointed for the vessel; however, he refused and only agreed on rendering services to the vessel. As regards the violations committed by the vessel, he said that they had not been concerned with or unaware of them. subsequently, the Committee decided to proceed with hearing the case and issue a decision on the case.

**Reasoning:**
It is evident in the facts referred to above that the General Directorate of Customs received cable no. 231733 from His Royal Highness the Crown Prince and Deputy Prime Minister and Minister of Interior on 6.9.1438H that the competent security authorities had information that the vessel MT ANDROUSSA, which flies the Liberian flag was suspected and there were substantive causes for checking it and His Royal Highness wanted that the said vessel should be checked by the security committee for ensuring its contents and the check process can be documented.

It is evident in the report issued by the Security Committee that it reached the following findings:

**First:** The presence of traces of high explosives
**Second:** Tampering with official documents
**Third:** Forging official documents
**Fourth:** Deletion of the navigational route while the vessel was in the Iranian ports
**Fifth:** The INMARSAT C2 and AIS – the arch for detailed AIS ship positions for the vessel C2. Track the route of C2 and view the latest positions, using the most recent vessel AIS
**Sixth:** The numbers of the maritime passports of the citizens of Montenegro were forged and replaced by the registration numbers of the passports:
**Seventh:** Attempting to break the marine blockade
**Eighth:** There is a large quantity of steel pipes:
**Ninth:** Results of the inspection of the computers in the vessel
**Tenth:** Observation of the Maritime Inspection Section at King Fahd industrial Port

Article 24 of the Unified Customs Law the entry or transit of suspicious materials onto the Saudi territories or territorial waters, unless with the approval of the Saudi competent authorities; however, the importing company did not do it.

Article 124 of the said Law entitles the administrative officers to embark on vessels in the customs range to check them and find smuggled or prohibited goods.

Article 126 of the said Law authorizes investigating on customs smuggling, detaining goods, and checking customs violations with regard to all goods throughout the Saudi territory.

Article 5 of the Unified Customs Law provides "the customs may exercise its powers over the Saudi territory and its territorial waters."

It is evident that the vessel MT ANDROUSSA committed a number of violations and was checked as shown in the report of the Security Committee authorized to document and check and examine the vessel. As such, the Committee decided to confiscate the vessel MT ANDROUSSA and its entire cargoes and the suspected steel pipes.

Therefore, after the Committee considered and deliberated on the case, it unanimously decides as follows:

Pronouncement of the Decision:
First; to confiscate the vessel MT ANDROUSSA with its cargoes in full and the suspected steel pipes on the ground that they are smuggled goods.

This decision is subject to appeal within 30 days from the notification date of the first instance judgment.

| **Secretary** | **Member** | **Member** | **Member** | **Member** |
|---|---|---|---|---|
| Abdulla Al Shaeri (Signed) | Mohamed Al Zahrani (Signed) | Saleh Al Ghamdi (Signed) | Mohamed Hamam (Signed) | Bandar Al Rahili (Signed) |

Chairman of First Instance Customs Committee – Jeddah
Abdul Rahman Bin Dhawi Al Mohana
(Signed)