# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

SWAIDAN TRADING CO., LLC           CIVIL ACTION

**VERSUS**           NO. 18-994

**DILETON MARITIME S.A., et al.**           SECTION: "G"(4)

## ORDER

Pending before this Court is Defendant Erikoussa Maritime S.A.'s ("Erikoussa") "Motion to Vacate and for Damages due to Wrongful Arrest."[1] In this case, Plaintiff Swaidan Trading Co. LLC ("Plaintiff") contends that Erikoussa, the record owner of the M/V ERIKOUSSA, is the alter ego of Defendant Dileton Maritime S.A. ("Dileton") such that Dileton is the beneficial owner of the vessel. Plaintiff also alleges that Defendant Androussa Maritime S.A. ("Androussa"), the record owner of the M/T ANDROUSSA, is also the alter ego of Defendant Dileton, such that Dileton actually controls both vessels. Plaintiff contends that its February 2, 2018, attachment of the M/V ERIKOUSSA should remain in place as security for the otherwise unrelated London arbitration between Plaintiff and Androussa regarding Androussa's alleged breach of a bill of lading for the M/T ANDROUSSA. Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion to the extent that the writ of attachment is vacated, but deny the motion to the extent that Erikoussa requests monetary damages, attorney's fees, or costs.

## I. Background

According to Plaintiff, on or about April 1, 2017, Plaintiff loaded its cargo onto the M/T

---

[1] Rec. Doc. 18.

ANDROUSSA in Djibouti to be discharged at Ras Isa Port, Yemen.[2] Plaintiff asserts that Defendant Androussa issued Plaintiff a clean bill of lading dated April 1, 2017.[3] Plaintiff states that on or about April 4, 2017, the M/T ANDROUSSA was stopped and boarded by forces led by the Kingdom of Saudi Arabia.[4] Plaintiff alleges that the ensuing inspections found several serious violations, which resulted in the confiscation of the M/T ANDROUSSA and all her cargo.[5]

On February 1, 2018, Plaintiff filed an original verified complaint in this Court against Dileton, Androussa, and Erikoussa, seeking an order authorizing the maritime attachment of the M/V ERIKOUSSA in accordance with Supplemental Admiralty Rule B.[6] On February 1, 2018, the Court denied Plaintiff's request for attachment, reasoning that Plaintiff did not properly allege a prima facie claim for alter ego liability.[7] On February 2, 2018, Plaintiff filed an original amended verified complaint, which sought the same remedy as its original verified complaint, including allegations that Dileton exercised complete control over Androussa with respect to the transaction at issue. [8] The same day, the Court ordered attachment of the M/V ERIKOUSSA.[9]

On February 20, 2018, Erikoussa filed the instant "Motion to Vacate and for Damages due to Wrongful Arrest."[10] On March 6, 2018, Plaintiff filed an opposition to Erikoussa's motion.[11]

---

[2] Rec. Doc. 9 at 3.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 5.

[6] Rec. Doc. 1.

[7] Rec. Doc. 8 at 2.

[8] Rec. Doc. 9.

[9] Rec. Doc. 11.

[10] Rec. Doc. 18.

On April 2, 2018, with leave of Court, Erikoussa filed a reply to Plaintiff's opposition.[12] On April 4, 2018, the Court held oral argument regarding the motion.[13]

## II. Parties' Arguments

### A. *Erikoussa's Motion to Vacate and for Damages Due to Wrongful Attachment*

Erikoussa first asserts that it is a distinct legal entity separate from Dileton and Androussa.[14] Erikoussa states that Sotirios Papantonopolous serves as the President, Secretary, and Treasurer of Erikoussa, and he is the sole shareholder of Desk Shipholding Co., which owns all 500 bearer shares in Erikoussa.[15] In response to Plaintiff's allegation that Dileton exercises complete control over Erikoussa, Erikoussa then asserts that "the sole connection between the two separate and distinct entities is an arm's length agreement, under which Erikoussa entrusted Dileton with the management [of] the M/V ERIKOUSSA."[16] According to Erikoussa, the management agreement requires that Erikoussa pays a monthly management fee and covers Dileton's expenses arising out of the management of the vessel.[17]

Moreover, responding to Plaintiff's statement that Erikoussa's mortgage agreement required Dileton to serve as the vessel's manager and guarantee the loan, Erikoussa asserts that this condition "was included in the mortgage to allow Eurobank Ergasias S.A. ("Eurobank") to be

---

[11] Rec. Doc. 24.

[12] Rec. Doc. 36.

[13] Rec. Doc. 37.

[14] Rec. Doc. 18-1 at 4.

[15] *Id.* at 5.

[16] *Id.*

[17] *Id.*

paid directly from charter hire/freights and/or insurance claims that might be collected by Dileton in the event Erikoussa failed to make timely payment."[18] Erikoussa contends that this arrangement did not result in any commingling of funds or blurring of corporate lines, as the vessel's income received by Dileton was held in trust for Erikoussa.[19] Nevertheless, Erikoussa avers that "[d]espite this prophylactic arrangement, the charter hire/freights of M/V ERIKOUSSA are paid directly to the bank account of Erikoussa held with Eurobank; not to Dileton."[20] Additionally, Erikoussa contends that such a "corporate guarantee of the manager is a frequent, almost standard security document in ship finance transactions . . . ."[21]

Erikoussa then asserts that Plaintiff has failed to add any substantive allegations to supplement Plaintiff's original complaint, which the Court determined failed to plead a prima facie alter ego claim.[22] According to Erikoussa, Plaintiff added only five allegations to its Amended Verified Complaint: (1) Dileton exercises complete control over Androussa and Erikoussa; (2) Dileton exercised complete dominion and control over Androussa, such that Dileton is the entity that perpetrated the acts regarding illegally storing weapons; (3) Dimitrios Papantonopoulos and Sotirios Papantonopoulos have complete dominion and control over the four vessel-owning entities, such that Dileton is the true beneficial owner of the vessels; (4) despite the fact that four vessels (including the Androussa and Erikoussa) were each registered in the names of their own companies, Dileton beneficially owned the vessels as assets of a single business enterprise; and

---

[18] *Id.* at 6.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

(5) all Defendants were operated, controlled, and managed by a single economic enterprise, which was controlled by Dimitrios Papantonopoulos and Sotirios Papantonopoulos.[23] Erikoussa asserts that these statements were only a recitation of the elements of a cause of action without any specific factual allegations.[24] Erikoussa states that the only factual allegation was that Dimitrios and Sotirios Papantonopoulos are the owners of Dileton; but Erikoussa asserts that this contention is false, as Sotirios Papantonopoulos has confirmed that he does not have ownership interest in Dileton.[25] Erikoussa avers that it has submitted evidence supporting that it has a separate corporate status, it receives the hire payments from charterers, it has a separate bank account, and it has no relationship to Dileton except for Dileton's technical and operational management of the vessel.[26] Erikoussa argues that "nothing at all has changed since the Court recognized and declared [Plaintiff's] alter ego allegations as insufficient to support the issuance of a writ of attachment.[27]

Moreover, according to Erikoussa, the Fifth Circuit evaluates specific factors when determining whether a plaintiff has met the burden for establishing a prima facie case for alter ego liability.[28] Erikoussa asserts that a "[p]oint-by-point consideration" of these factors shows that Plaintiff has not established such a prima facie case.[29]

First, Erikoussa contends that there is no common ownership between Erikoussa and Dileton or between Erikoussa and Androussa, considering that Sotirios Papantonopoulos, who

---

[23] *Id.*

[24] *Id.* at 11.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 12.

[29] *Id.* at 13.

does not own any shares in either Dileton or Androussa, owns all the shares of Desk Shipholding, which owns all the shares of Erikoussa.[30] Additionally, Erikoussa asserts that there is one overlapping officer/director between Erikoussa and the other two defendants, as Sotirios Papantonopoulos is the sole director of Erikoussa and one of the directors of Dileton, but is neither an officer nor a director of Androussa Shipping.[31] Nevertheless, Erikoussa contends that the Fifth Circuit has stated that even full overlap, which does not exist here, "is insufficient to demonstrate an alter ego relationship."[32]

Erikoussa then asserts Dileton and Erikoussa share a corporate office address because of Dileton's position as manager of the M/V ERIKOUSSA.[33] Erikoussa further states that a shared address "has also been given very little weight in alter ego analyses."[34]

Moreover, Erikoussa avers that Plaintiff does not allege that Erikoussa is undercapitalized.[35] Erikoussa then states that Plaintiff does not allege that Dileton finances Erikoussa, and the evidence shows that Erikoussa is financed by the profits of the M/V ERIKOUSSA with a monthly management fee being paid to Dileton.[36] Furthermore, Erikoussa states that Plaintiff does not allege that Dileton exists solely as a holding company for Erikoussa, and the evidence shows that Erikoussa enters into contracts for its own benefit.[37]

---

[30] *Id.*

[31] *Id.* at 13 – 14.

[32] *Id.* at 14 (citing *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985)).

[33] *Id.*

[34] *Id.* (citing *Ocean Marine Mut. Ins. Ass'n v. M/V Lia*, No. 99-2515, 1999 WL 679671, at *9–10 (E.D. La. Aug. 27, 1999) (Sear, J.)).

[35] *Id.*

[36] *Id.* at 14–15.

Erikoussa additionally contends that Plaintiff does not allege that Dileton uses any of Erikoussa's assets as its own, and the evidence shows that Dileton manages the M/V ERIKOUSSA in order to generate management fees, while the revenues obtained by the vessels operation are paid to Erikoussa's account.[38] Erikoussa then asserts that Plaintiff "has not alleged that any intercorporate loans exist, much less that their terms show an improper relationship between Dileton and Erikoussa."[39] Similarly, Erikoussa avers that Plaintiff has not alleged that Dileton caused the incorporation of Erikoussa.[40] Moreover, according to Erikoussa, such an allegation would not "withstand common-sense scrutiny, given there is no common ownership between Dileton and Erikoussa."[41]

According to Erikoussa, Plaintiff has not alleged that Erikoussa and any other defendant file consolidated income tax returns, and Erikoussa does not do so.[42] Erikoussa states that Plaintiff "has not identified a single instance in which Dileton (or Androussa Shipping, for that matter) actually dictated the actions of Erikoussa."[43] Erikoussa also asserts that there is no evidence that Sotirios Papantonopoulos "ever made decisions on Erikoussa's behalf with Dileton's interests in mind (or vice versa), nor otherwise blurred the lines between Erikoussa's and Dileton's separate incorporation and existence."[44] Erikoussa then avers that a management agreement similar to the

---

[37] *Id.* at 15.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 16.

[42] *Id.*

[43] *Id.*

[44] *Id.*

one between Dileton and Erikoussa exists for "virtually every single ocean-going commercial vessel."[45]

Next, Erikoussa contends that Plaintiff has not submitted any evidence nor has Plaintiff made substantive allegations that Erikoussa failed to adhere to formal legal requirements as a separate legal entity from Dileton and Androussa Shipping.[46] Erikoussa states that its "Articles of Incorporation, Bylaws, and Resolutions of the Sole Director, Sotirios Papantonopoulos, fully support Erikoussa's observance of formal legal requirements."[47] Finally, Erikoussa asserts that Plaintiff has not alleged a wrongful act on the part of Erikoussa, nor has Plaintiff alleged how Erikoussa's formation was used to defraud Plaintiff.[48]

Furthermore, Erikoussa asserts that it is entitled to damages for wrongful attachment of its vessel.[49] Erikoussa states that Plaintiff "obtained a small handful of documents . . . and from there made sweeping assumptions of corporate ownership, control, and disregard of corporate separateness."[50] Moreover, Erikoussa asserts that Plaintiff's decision to amend its complaint makes its "unjustified pursuit of Erikoussa's vessel . . . even more malicious . . . ."[51] As a result, Erikoussa requests damages "including but not limited to charter hire lost while the ERIKOUSSA sat idle in port as a result of [Plaintiff's] attachment and the premium Erikoussa was forced to pay to secure

---

[45] *Id.* at 17.

[46] *Id.*

[47] *Id.* at 18.

[48] *Id.*

[49] *Id.* at 19.

[50] *Id.*

[51] *Id.* at 20.

a $12 million bond to obtain the vessel's release."[52]

### B. *Plaintiff's Opposition to Defendant's Motion*

In opposition, Plaintiff first states that it must provide only reasonable grounds to sustain the attachment.[53] Moreover, Plaintiff states that it "pleaded factual allegations supported by documentation that present a *prima facie* admiralty claim . . . ."[54] Plaintiff contends that its alter ego allegations are "supported by the factual evidence in this case."[55] Plaintiff states that "it is important to note that the underlying substantive claims are not just against Androussa, but against Dileton as well."[56] Plaintiff asserts that on or about June 29, 2017, it purchased a cargo of gas oil to be transported on the M/T ANDROUSSA, which was then allegedly seized by forces led by the Kingdom of Saudi Arabia for "the smuggling of illegal weapons."[57] Plaintiff alleges that Dileton, which Plaintiff asserts is the beneficial owner of the M/T ANDROUSSA and the M/V ERIKOUSSA, "breached the bill of lading for the carriage of cargo."[58] As a result, Plaintiff argues that the attachment of the M/V ERIKOUSSA was proper.[59]

Arguing that Erikoussa and Androussa are alter egos of Dileton, Plaintiff first asserts that Defendants Dileton, Erikoussa, and Androussa all have common or overlapping stock ownership,

---

[52] *Id.*

[53] Rec. Doc. 24 at 5.

[54] Rec. Doc. 24 at 7.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 8.

[58] *Id.*

[59] *Id.*

as the Papantonopoulous family are the owners and shareholders of all the Defendants.[60] Similarly, Plaintiff asserts that Sotirios Papantonopoulous and Dimitrios Papantonopoulous are the only two officers of Dileton and Sotirios, who is the son of Dimitrios, is the sole officer for Erikoussa.[61] Thus, Plaintiff contends that there are common officers among the Defendants.[62]

Moreover, Plaintiff contends that Erikoussa disregards corporate formalities as it does not have an office, a website, an email account, or any other identifying characteristics.[63] Plaintiff states that the address for Erikoussa and Androussa is the same.[64] Plaintiff also asserts that pursuant to the mortgage agreement between the lending bank and the Erikoussa, Dileton is required to serve as the manager of the M/V ERIKOUSSA, which Plaintiff alleges is the only asset for Erikoussa.[65] Thus, Plaintiff argues that "Defendant Erikoussa is merely a paper company, used as a mere instrumentality of Defendant Dileton."[66] Plaintiff also asserts that Dileton holds the Certificate of Financial Responsibility for the M/V ERIKOUSSA, which means that Dileton is the responsible party for any cleanup costs resulting from oil or chemical spills or leaks.[67] Plaintiff states that according to the Oil Pollution Act of 1990, the responsible party is any party owning, operating, or demise chartering a vessel.[68] Plaintiff argues that "[t]his is further evidence of

---

[60] Rec. Doc. 24 at 12.

[61] *Id.* at 13.

[62] *Id.*

[63] *Id.* at 14.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 15.

Dileton's control and domination of the M/V ERIKOUSSA and Defendant Erikoussa."[69]

Additionally, Plaintiff asserts that TradeWinds, an industry publication in the maritime community, listed Dileton as the owner of the M/T ANDROUSSA and published an article concerning Dileton's purchase of the soon to be named M/V ERIKOUSSA.[70] Plaintiff contends that Dileton did not request a correction or retraction, and the article is indicative of Dileton using the property as its own.[71]

Plaintiff also asserts that the requirement contained in the Mortgage Agreement that Dileton serve as the manager of the vessels shows a failure to conduct arms-length transactions.[72] Furthermore, Plaintiff states that any notices, requests, demands, or other communications regarding the M/V ERIKOUSSA's Loan Agreement are directed to be sent to the care of Defendant Dileton at its principal place of business in Greece.[73] Plaintiff notes that the Second Circuit has stated that "[e]vidence that transactions are not arms-length include when the parent obtains financing for the subsidiary by guaranteeing a loan, by providing security, or subordinating the parent's debt to the loan provider."[74]

Plaintiff also alleges that Dileton "falsely represented the number of weapons on board the M/T ANDROUSSA by excluding the presence of firearm components and explosive material."[75]

---

[69] *Id.*

[70] *Id.*

[71] *Id.* at 16.

[72] *Id.*

[73] *Id.* at 17.

[74] *Id.* (citing *A&P Brush Mfg. Corp. v. NLRB*, 140 F.3d 216, 221 (2d Cir. 1998)).

[75] *Id.*

Plaintiff argues that "Dileton now intends to operate its remaining vessels, including the M/V ERIKOUSSA with impunity, as it attempts to hide behind the sham company that is Moving Defendant Erikoussa without providing Plaintiff with payment or security for the lost cargo."[76] Plaintiff asserts that tort claimants need only show constructive fraud, which "requires only a showing that the separate corporate existence would bring about an inequitable result, neither fraud nor an intent to defraud need be shown."[77] Plaintiff argues that allowing Dileton "to hide behind Erikoussa . . . would cause an inequitable result for Plaintiff."[78]

Plaintiff also asserts that Erikoussa submitted monthly invoices provided by Dileton but did not provide any corresponding payment information.[79] According to Plaintiff, Erikoussa showed evidence of two wire transfers from Erikoussa to Dileton, one for $100,000 and another for $60,000, despite the fact that the Management Agreement between the two required a payment of a management fee totaling $25,000 per month.[80] Plaintiff states, "Were the arrangement truly arms-length, there would be evidence of accounting and regular payments for same."[81] Plaintiff then asserts that these payments were not authenticated by Sotirios Papantonopoulos in his declaration and Sotirios Papantonopoulos only provided invoices and non-matching payments, rather than all invoices and corresponding payments.[82] Plaintiff also states that Erikoussa's letter

---

[76] *Id.* at 17–18.

[77] *Id.* at 18.

[78] *Id.*

[79] *Id.* at 18.

[80] *Id.*

[81] *Id.*

[82] *Id.* at 19.

from Eurobank Egrasias S.A., which Erikoussa allegedly offered as proof that Erikoussa and Dileton maintain separate bank accounts, refers to "Erikoussa Shipping S.A.," rather than Defendant "Erikoussa Maritime S.A.," and does not refer to Dileton at all.[83]

Plaintiff then asserts that it is not required to prove all of its alter ego allegations or have all the information "regarding the web of sham corporations created by Defendants" at a Rule E(4)(f) proceeding.[84] Plaintiff contends that it has set forth reasonable grounds "in support of the legal remedy sought by Plaintiff in this matter, *i.e.* the reverse corporate veil piercing to attach the asset of the subsidiary Erikoussa for the injustice and fraud committed by Erikoussa's holding company parent, Defendant Dileton."[85]

Plaintiff also avers that the Declaration of Sotirios Papantonopoulos is "more noteworthy for what it *does not* say than what it does," as Plaintiff alleges that Papantonopoulos has not provided any documents related to Dileton or a clear statement regarding his role with Dileton.[86] Plaintiff argues that due to his roles as Chartering Manager of Dileton and the sole owner of Erikoussa, Sotirios Papantonopoulos "would be uniquely situated to provide a wealth of documentation showing an arms-length relationship, and yet no such information is provided or even suggested."[87]

Plaintiff asserts that it must "make a valid *prima facie* admiralty claim against the defendant" to support the reasonable grounds for the attachment.[88] Plaintiff contends that if there

---

[83] *Id.*

[84] *Id.*

[85] *Id.* at 20–21.

[86] *Id.* at 22.

[87] *Id.* at 22.

are any deficiencies in the amended verified complaint, Plaintiff ought to be able to move for leave to file a second amended complaint and a stay of any order to vacate the order of attachment.[89] Finally, Plaintiff asserts that the seizure of the M/V ERIKOUSSA was not done with bad faith, malice, or gross negligence, as Plaintiff states that it has reasonable grounds to believe that the Defendants are "various aspects of a single entity."[90]

### C. *Defendant's Reply to Plaintiff's Motion*

In reply, Erikoussa argues that Plaintiff's "reasonable grounds" must be supported by evidence and Plaintiff's asserted prima facie standard does not apply to the instant action.[91] Erikoussa also asserts that Plaintiff's attempt to apply a prima facie standard is "a tacit admission that [Plaintiff] has not met the burden required to sustain the attachment."[92] Moreover, Erikoussa argues that Plaintiff only offers conclusory allegations and does not present any evidence.[93] Erikoussa asserts that Plaintiff has not alleged a single instance in which Dileton actually exercised "dominion or control" over Erikoussa.[94]

Erikoussa then argues that Plaintiff's direct claims against Dileton and Androussa are immaterial to Erikoussa, as Plaintiff has not stated how the allegations regarding illegal smuggling are related to Erikoussa.[95] Erikoussa asserts that Plaintiff has not provided any evidence that

---

[88] *Id.* at 23.

[89] *Id.*

[90] *Id.* at 24–25.

[91] Rec. Doc. 36 at 2.

[92] *Id.* at 4.

[93] *Id.*

[94] *Id.* at 5.

[95] *Id.*

Erikoussa was involved or even had knowledge of the alleged wrongful acts.[96]

Moreover, Erikoussa again contends that Plaintiff has made conclusory allegations that are unsupported by evidence.[97] Looking to the alter ego factors put forth by the Fifth Circuit, Erikoussa asserts that Plaintiff has not alleged any common or overlapping stock ownership because Sotirios Papantonopoulos does not have any ownership stake in Dileton.[98] Erikoussa argues that "in the absence of any authority holding a son's company liable for the ***alleged*** acts of his father's business, [Plaintiff's] allegations amount to nothing at all legally."[99] Erikoussa acknowledges that Sotirios Papantonopoulous is an officer of both Dileton and Erikoussa.[100] However, Erikoussa asserts that this is insufficient to pierce the corporate veil, as it argues that "the Fifth Circuit has found that *full* overlap of directors and officers is insufficient to pierce the corporate veil."[101]

Additionally, addressing Plaintiff's argument that the parties have disregarded corporate formalities, Erikoussa asserts that it has offered evidence showing that "it maintains separate funds, maintains separate accounts, has followed statutory formalities for corporate formation, has its own Articles of Incorporation, and holds required meetings."[102] Erikoussa states that Plaintiff's contentions that Erikoussa does not have a website, shares an office, and hired a manager to operate its vessel are immaterial to the Fifth Circuit's standard for corporate formalities.[103] Erikoussa

---

[96] *Id.* at 6.

[97] *Id.* at 8.

[98] *Id.*.

[99] *Id.* at 8 (emphasis included in original).

[100] *Id.* at 9.

[101] *Id.*

[102] *Id.*

[103] *Id.*

argues that unlike in *Classic Maritime Inc. v. Limbungan Makmur SDN BHD*, a decision from the Southern District of New York cited by Plaintiff, Plaintiff does not prove ownership of one company by the other, Dileton's ability to control Erikoussa, severe undercapitalization, two common officers and one common director, or payment of at least four of Erikoussa's debts.[104]

Moreover, Erikoussa contends that Plaintiff "does not allege that Dileton uses the ERIKOUSSA as its own vessel."[105] According to Erikoussa, Plaintiff cannot make such an allegation because Erikoussa has "already voluntarily produced evidence that Erikoussa retains the profits of the vessel's operation and pays Dileton a monthly fee for its management services."[106] Erikoussa contends that rather than asserting that Dileton uses the vessel as its own, Plaintiff asserts that Dileton lists the vessel as part of its managed fleet, Dileton obtained a Certificate of Financial Responsibility for the vessel, and news sources incorrectly referred to Dileton as the owner.[107] However, Erikoussa states that these arguments "are not the factors that the Fifth Circuit has instructed courts to consider, nor has [Plaintiff] offered any authority to suggest that they are equivalent in any way."[108]

Erikoussa then asserts Plaintiff cannot be successful in its claim by showing constructive fraud.[109] According to Erikoussa, Plaintiff cites a court in the Western District of Texas which "was addressing the uniquely-Texan doctrine of 'sham to perpetrate a fraud,' which it explicitly

---

[104] *Id.* at 10.

[105] *Id.*

[106] *Id.*

[107] *Id.* at 10–11.

[108] *Id.* at 11.

[109] *Id.*

distinguished from the alter ego doctrine that [Plaintiff] has pled and that applies under federal common law."[110] Moreover, Erikoussa argues that Plaintiff has not pled any acts or omissions by Erikoussa or any of Erikoussa's principals in connection with fraud allegations.[111]

Erikoussa contends that Plaintiff attempts to lower the bar on how the Court should evaluate the totality of the facts by citing cases inapplicable to the instant situation.[112] Erikoussa asserts that the court in *Maersk v. Neewra, Inc.*, a Southern District of New York case which was cited by Plaintiff "for the proposition that Androussa's and Dileton's alleged misdeeds can . . . be held against Erikoussa," does not evaluate an alter ego issue.[113] Instead, according to Erikoussa, "*Maersk* dealt with a bill of lading that explicitly made the principals of the shipper liable for payment of freight, and a situation where one principal rather obviously lied about his identity to the Court in an effort to escape liability."[114]

Moreover, without identifying the specific case, Erikoussa states that Plaintiff's "next authority, cited for the proposition that [Plaintiff] should not have to produce any evidence at all in support of its conclusory and baseless allegations of *inter alia* 'dominion and control,'" also is inapplicable to the present case.[115] Erikoussa asserts that the case is inapplicable because it applied a prima facie standard, as opposed to a reasonable grounds standard, that has never been appropriate in the Fifth Circuit.[116]

---

[110] *Id.*

[111] *Id.* at 12.

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Id.*

Erikoussa also asserts that Plaintiff "grossly negligently (if not intentionally) misrepresents" the record in the present case in stating that *Asarco LLC v. Americas Mining Corp.* applies to the present situation by characterizing Erikoussa as a subsidiary to a holding company parent Dileton.[117] Erikoussa states that this comparison is "blatantly misleading," as Sotirios Papantonopoulos owns 100% of the shares of Erikoussa, but 0% of the shares of Dileton.[118]

Instead, Erikoussa states that *United States v. Jon-T Chemicals, Inc.*, a Fifth Circuit case that states that total domination of the subservient corporation is required for liability under the instrumentality rule, is the only remaining authority that is helpful.[119] Erikoussa asserts that Plaintiff has not "offered the slightest bit of specific allegation (much less evidence) that Dileton has ever controlled Erikoussa in the slightest, nor dominated its finances, policies, and practices, nor deprived it of its separate corporate existence."[120]

Moreover, Erikoussa asserts that Plaintiff should not be allowed to conduct jurisdictional discovery because it has not shown the exact discovery it seeks and what that discovery will prove.[121] Erikoussa also avers that Plaintiff should not be granted an opportunity to amend its complaint, "as [Plaintiff] has had plenty of opportunity to present any facts and evidence it posseses."[122] Finally, Erikoussa states that Plaintiff's response to Erikoussa's assertion that Plaintiff's attachment of the vessel was in bad faith was that Plaintiff "acted on the advice of

---

[116] *Id.*

[117] *Id.* at 13.

[118] *Id.*

[119] *Id.*

[120] *Id.* at 14.

[121] *Id.* at 15.

[122] *Id.*

counsel."[123] Thus, Erikoussa asserts that Plaintiff has waived attorney-client privilege, and Plaintiff has not offered testimony regarding its process for concluding that it should attach the M/V ERIKOUSSA.[124]

### III. Legal Standard

To support maritime attachment of property pursuant to Supplemental Admiralty Rule B, a plaintiff, in addition to satisfying applicable filing, notice, and service requirements,[125] must show that: (1) the plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.[126] Supplemental Rule B provides for a quasi in rem proceeding.[127] The claim is against the named person, but, when that person cannot be found in the district, the plaintiff may proceed against the named person's property.[128]

Once a defendant's property has been attached, the defendant can move to vacate the attachment under Rule E(4)(f).[129] The attachment must be vacated if the plaintiff fails to sustain

---

[123] *Id.*

[124] *Id.*

[125] "The order of attachment may be requested and granted ex parte, though notice of the attachment to the defendant via appropriate service is required." *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 50 (2nd Cir. 2008), *cert. denied*, 555 U.S. 1102 (2009)

[126] *Austral Asia Pte. Ltd. v. SE Shipping Lines Pte. Ltd*, No. 12-1600, 2012 WL 2567149, at *1 (E.D. La. July 2, 2012) (Engelhardt, J.) (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2nd Cir. 2006) (*abrogated on other grounds* by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2nd Cir. 2009))).

[127] *Id.* (citing *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 987 (5th Cir. 1992)).

[128] *Id.*; see also Fed. R. Civ. P. Supp. Adm. Rule B(1).

[129] *Austral Asia Pte. Ltd.*, 2012 WL 2567149, at *1 (citing *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 51 (2nd Cir. 2008), cert. denied, 555 U.S. 1102 (2009)).

his burden of showing that the requirements of Rules B and E are satisfied.[130]

For purposes of a Rule E(4)(f) post-arrest hearing, "[s]uperficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate."[131] Rather, "the attaching party must present sufficient evidence to show probable cause for the attachment."[132] Thus, a "district court may certainly vacate the [attachment] if it determines, after hearing from both parties, that the requirements of Rule B have not actually been met."[133]

A Rule E(4)(f) hearing, however, is not intended to definitively resolve the dispute between the parties; instead, the district court must make a preliminary determination whether reasonable grounds exist for the arrest.[134] In other words, in Rule E(4)(f) hearings, courts do not make binding determinations of fact; they merely hold that it is or is not likely that alleged facts are true.[135]

Moreover, the alter ego doctrine applies only if: "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil."[136] Thus, Plaintiff must

---

[130] *Aqua Stoli Shipping Ltd.*, 460 F.3d at 445; see Fed. R. Civ. P. Supp. Adm. Rule E(4)(f) ("[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.").

[131] *Williamson*, 542 F.3d at 52.

[132] *Diesel Specialists v. M/V Mohawk Transp., LLC.*, No. 09–2843, 2009 WL 1036085, *1 (E.D. La. April 17, 2009)(Engelhardt, J.); *see also Naftomar Shipping and Trading Co. v. KMA Intern., S.A.,* No. V–11–2, 2011 WL 888951, *3 (S.D. Tex. March 3, 2011) (Rainey, J.) ("plaintiff bears the burden to establish probable cause for the arrest")(quoting *A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al.,* No. 99–1440, 1999 WL 311941, *1 (E.D. La. May 17, 1999) (Vance, J.) (internal citations omitted)).

[133] *Austral Asia Pte. Ltd.*, 2012 WL 2567149, at *1 (citing *Williamson*, 542 F.3d at 52).

[134] *World Fuel Servs. Singapore PTE, Ltd. v. M/V*, No. 17-30018, 2018 WL 1296918, at *2 (5th Cir. March 12, 2018).

[135] *Austral Asia Pte. Ltd.*, 2012 WL 2567149, at *1 (citing *Naftomar Shipping and Trading Co.*, 2011 WL 888951, at *3).

[136] *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir.2003).

establish reasonable grounds to support a finding of Dileton's dominion and control over Erikoussa

and Androussa as well as fraud in relation to the underlying transaction involving the fixture of

the M/T ANDROUSSA bill of lading.

While adopting a totality of the circumstances test, the Fifth Circuit has developed a non-

exhaustive list of factors to consider in determining whether one company exercises dominion and

control over another, such that an alter ego relationship exists:

> (1) the parent and subsidiary have common stock ownership; (2) the parent and
> subsidiary have common directors or officers; (3) the parent and subsidiary
> have common business departments; (4) the parent and subsidiary file
> consolidated financial statements; (5) the parent finances the subsidiary; (6) the
> parent caused the incorporation of the subsidiary; (7) the subsidiary operated
> with grossly inadequate capital; (8) the parent pays salaries and other expenses
> of subsidiary; (9) the subsidiary receives no business except that given by the
> parent; (10) the parent uses the subsidiary's property as its own; (11) the daily
> operations of the two corporations are not kept separate; (12) the subsidiary
> does not observe corporate formalities.[137]

"To state a prima facie claim for alter ego liability, plaintiffs must make specific factual allegations

from which alter ego status can be inferred; conclusory allegations are insufficient."[138]

## IV. Analysis

Plaintiff asserts that it has established reasonable grounds to support a finding that Dileton

exercises dominion and control over Erikoussa and Androussa. Specifically, Plaintiff asserts that

the Papantanopoulos family owns all three Defendants, and Dileton acts as the manager of the

M/V ERIKOUSSA and the M/T ANDROUSSA while holding itself out as the owner of the vessels

to the public. Plaintiff also states that Dileton acted as the Corporate Guarantor for the Mortgage

---

[137] *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 n.2 (5th Cir. 2000).

[138] *Emeraldian Ltd. Partnership v. Wellmix Shipping Ltd.*, No. 08-Civ-2991, 2009 WL 3076094, at *3 (S.D.N.Y. Sept. 28, 2009).

Agreement for the M/V ERIKOUSSA, and the agreement required that Dileton act as the manager of the vessel. Defendant asserts that a similar ownership structure and list of directors is insufficient to warrant attachment. Defendant further asserts that Plaintiff has not presented evidence to warrant its claim that Erikoussa is an alter ego of Dileton, but Plaintiff has only made conclusory allegations.

As noted above, the Fifth Circuit has developed a non-exhaustive list of factors to consider in determining whether one company exercises dominion and control over another. Evaluating the common stock ownership of Erikoussa and Dileton, despite the fact that the Papantonopoulos family owns all three businesses, the ownership structure of Erikoussa is different than that of Dileton, as Sotirios Papantonopoulos owns 100% of the shares of Erikoussa, whereas Dimitrios Papantonopoulos owns Dileton. Moreover, considering the common directors of the companies, although Sotirios Papantonopoulos acts as an officer/director for both Erikoussa and Dileton, Plaintiff provides no evidence that he acted improperly in any manner in his dual role. In stating that 100% shared ownership and/or identity of directors and officers between two companies is an insufficient basis to apply the alter ego theory, the Fifth Circuit has reasoned, "we maintain the fiction that an officer or director of both corporations can change hats and represent the two corporations separately, despite their common ownership."[139] Another court in this district has even specified that an overlap of ownership, officers, and directors is particularly common in the maritime industry.[140] As a result, the evidence regarding the ownership and directorship by the Papantonopoulos family, and specifically Sotirios Papantonopoulos, is not sufficient to warrant a finding of reasonable grounds that Erikoussa is the alter ego of Dileton.

---

[139] *Jon-T Chems, Inc.*, 768 F.2d at 691.

[140] *Austral Asia Pte. Ltd. v. SE Shipping Lines Pte.*, No. 12-1600, 2012 WL 2567149, at *2 (July 2, 2012).

Moreover, looking to whether the operations of the two companies are kept separate, management agreements, such as the one between Dileton and Erikoussa, are very common in a maritime context. Plaintiff's assertions regarding Dileton's control of the M/V ERIKOUSSA's operation amount to similar authority that a vessel's manager commonly holds. It is also not unusual that a bank would require a vessel's manager to guarantee the vessel's loan, considering the manager ensures that a vessel is operating. Additionally, evaluating whether Dileton uses Erikoussa's property as its own, while Dileton listed Erikoussa as its vessel on its website and the vessel was described as Dileton's vessel in a trade publication, it is not unreasonable that a manager would publicize the assets it operates in order to be contacted about their actual operation. Regarding the agreement itself, Plaintiff does not allege that the terms of the agreement are more favorable to Dileton than Erikoussa, or vice-versa, which weighs toward not only whether Dileton is using Erikoussa's property as its own but also whether the operations of the two companies are kept separate.

Furthermore, considering the Fifth Circuit's factor of whether the parent and subsidiary file consolidated financial statements, Plaintiff has not alleged that Dileton and Erikoussa file a consolidated financial statement. Similarly, considering the significant factor of whether the subsidiary operated with grossly inadequate capital, Plaintiff has not alleged that Erikoussa is undercapitalized.[141] Plaintiff also does not dispute that the chartering money goes directly to Erikoussa's own bank account, which supports Erikoussa's assertion that Dileton does not finance Erikoussa. Instead, Plaintiff asserts that payments from Erikoussa to Dileton do not exactly match

---

[141] *See, e.g., Ocean Marine Mut. Ins. Ass'n (Europe) O.V.*, 1999 WL 679671 (stating that the plaintiff's failure to produce evidence of undercapitalization was one of the reasons for vacating attachment); *A. Coker & Co. Ltd v. Nat'l Shipping Agency Corp.*, No. Civ. A. 99-1440, 1999 WL 311941, at *2 (E.D. La. May 17, 1999) (Vance, J.) (stating that the plaintiff's evidence of undercapitalization was one of the reasons for denying a motion to vacate attachment).

up with their monthly management fee, but Erikoussa has established that the terms of the management agreement requires Erikoussa to pay not only that fee but also the costs Dileton incurs in the management of the vessel. Thus, Plaintiff does not establish that Erikoussa's capitalization or Erikoussa's payments to Dileton constitute a finding of reasonable grounds that Erikoussa is the alter ego of Dileton..

Furthermore, evaluating whether Erikoussa observes corporate formalities, Plaintiff asserts that Erikoussa has disregarded corporate formalities, as it does not have an office, a website, an email, or other identifying characteristics. However, Plaintiff provides no authority that supports its assertion that such facts constitute disregarding corporate formalities, while Erikoussa provides evidence that it has met the legal requirements for a corporation. Thus, considering the totality of the circumstances, Plaintiff has failed to provide reasonable grounds that Erikoussa is an alter ego of Dileton. Accordingly, the attachment must be vacated.

Furthermore, Plaintiff fails to provide any evidence that Androussa is an alter ego of Dileton. Thus, even if Erikoussa is an alter ego of Dileton, Plaintiff has failed to provide reasonable grounds to support the attachment of the M/V ERIKOUSSA, as the alleged underlying fraud concerns Androussa and the seizure of the M/T ANDROUSSA. Although Plaintiff may assert that the corporations must be similar because of their similar relationship in formation by the Papantonopoulos family, such an allegation without some supporting evidence is insufficient to show reasonable grounds for the attachment.

The Fifth Circuit has held that "[t]o recover for wrongful arrest of a vessel, there must be (1) no bona fide claim of a maritime lien on the vessel and (2) a showing of 'bad faith, malice, or gross negligence on the part of the offending party."[142] Although the Court finds that the

---

[142] *Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 574–75 (5th Cir. 2015).

attachment should be vacated, Erikoussa has not shown "bad faith, malice, or gross negligence" on the part of Plaintiff. Erikoussa characterizes Plaintiff's allegations of common ownership, control, officers, and directors as "demonstrably false," but Plaintiff was correct in stating that members of the Papantonopoulos family are involved in all three companies as owners and/or directors and that Dileton acts as the manager of Erikoussa and Androussa. Thus, while these facts do not constitute reasonable grounds for attachment of the Erikoussa, they also do not appear to be "demonstrably false."

Accordingly,

**IT IS HEREBY ORDERED** that Erikoussa's "Motion to Vacate and for Damages due to Wrongful Arrest"[143] is **GRANTED IN PART** to the extent that the writ of attachment issued by this Court regarding the M/V ERIKOUSSA is vacated and **DENIED IN PART** to the extent that Erikoussa requests monetary damages, attorney's fees, or costs.

**NEW ORLEANS, LOUISIANA**, this 16th day of April, 2018.



**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[143] Rec. Doc. 18.